UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WAYNE A. RANKIN,<br><br>               Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>               Defendant. | CASE NO.    C07-5558FDB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for August 29, 2008 |

Plaintiff, Wayne A. Rankin, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess's review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 47 years old.[1] Tr. 24. He has a high school education and past work

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

experience as a mail carrier, mail handler and stamp seller. Tr. 22, 316, 350.

On June 12, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of June 2, 2006, due to testicular cancer, a back injury, knee problems, esophageal reflux, a fatty liver, hyperlipidemia, sleep apnea, obesity, osteoarthritis, degenerative joint of the knee, and plantar fasciitis. Tr. 22, 24, 61-63, 79. His application was denied initially and on reconsideration. Tr. 24-26, 35, 38. A hearing was held before an administrative law judge ("ALJ") on April 24, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 312-56.

On May 23, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of residuals from testicular cancer, sleep apnea, degenerative joint disease of the hips and knee, hernia issues, and obesity;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of sedentary work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 15-23. Plaintiff's request for review was denied by the Appeals Council on August 17, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981.

On October 8, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed on January 14, 2008. (Dkt. #11). Specifically, plaintiff argues that decision should be reversed and remanded for further administrative proceedings for the following reasons:

(a) the ALJ erred in evaluating the opinion of his treating physician;

(b) the ALJ erred in assessing plaintiff's credibility; and

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(c)  the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, recommends that the ALJ's decision should be reversed and this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Erred in Evaluating the Opinion of Plaintiff's Treating Physician

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the

evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

On November 18, 2005, plaintiff's treating physician, Jorge Mata, D.O., diagnosed plaintiff with degenerative joint disease of the right knee. Tr. 132.  Dr. Mata stated that he asked plaintiff "to go ahead and reduce weightbearing, such as using lean bars or trying to do a little bit more sitting versus standing," and to engage in "just a little bit of weight loss." Id.  Dr. Mata also asked plaintiff to restrict "repetitive bending, such as climbing stairs or getting out of the chair and to avoid direct pressure to his right knee." Id.  Plaintiff argues the ALJ erred in failing to address this last opinion in his decision.  Defendant argues the ALJ did discuss that opinion in his decision (see Tr. 17), and that the residual functional capacity with which the ALJ assessed plaintiff properly accounted for the limitations found by Dr. Mata by restricting plaintiff to a modified range of sedentary work involving only occasional bending, squatting, kneeling, and

1 | stooping (see Tr. 20).

2 | The undersigned, however, finds the ALJ erred here. It is true that the ALJ did mention the opinion provided by Dr. Mata on November 18, 2005, noting specifically that Dr. Mata told plaintiff "to do more sitting rather than standing and that he should do less lifting and no repetitive bending." Tr. 17. Plaintiff's assertion that the ALJ did not address Dr. Mata's opinion, therefore, is without merit. On the other hand, the ALJ's restriction to only occasional bending, squatting, kneeling, and stooping did not adequately account for all of the limitations imposed by Dr. Mata. This is because it failed to include the additional limitations Dr. Mata regarding climbing stairs, getting in and out of chairs and avoiding direct pressure on the right knee. The ALJ should have including those limitations or explained why he did not do so, and his failure in that regard was error.

II. The ALJ Erred in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ

also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

Plaintiff argues that while the ALJ noted he had testified that he "could sit for 30-45 minutes at a time" and "could only sit a couple hours in an eight hour day," the ALJ gave no good reasons for failing to adopt this testimony, stating only that plaintiff was able to "do work that was mainly sitting until he retired from work and there is no evidence of significant change in his condition since then." Tr. 19, 21, 341-42. The undersigned agrees. The evidence in the record does not support a finding that plaintiff's work during the period prior to his retirement was mainly sitting. With respect to that work, plaintiff testified that while a chair was provided for him, it's feasibility in terms of use while performing his job tasks was limited. Tr. 320-21. Plaintiff further testified that he would sit for at most an hour out of a period of eight hours, and that the rest of the day he would stand. Tr. 321-22. The ALJ gave no other valid, specific reason for finding that plaintiff lacked credibility regarding this limitation.

Plaintiff also argues the ALJ erred in rejecting his testimony that he has to rest for between one half hour and two hours per day in the afternoon due to fatigue. See Tr. 335-36, 344. With respect to plaintiff's fatigue, the ALJ found as follows:

> . . . He reports headaches and fatigue, but he has also reported that his CPAP machine was broken. His headaches and fatigue might improve significantly when his sleep apnea is appropriately treated. . . . While the claimant may currently take regular naps, this may be due to the fact that he can take these naps since he is not working. If he pursues treatment for his apnea, it is reasonable to conclude that he would not need regular naps at work.

Tr. 21-22. Plaintiff argues these are not valid reasons for discounting his credibility on this issue. Again, the undersigned agrees. As plaintiff points out, there is no express evidence in the record to support the ALJ's conclusion that his naps are voluntary, rather than due to fatigue. While certainly not working may make taking naps easier, this does not necessarily mean they are not actually needed.

The record also fails to show that plaintiff's fatigue would improve significantly if his sleep apnea was appropriately treated. Thus, while plaintiff did report in early April 2007, that he thought his tiredness was in part "related to [his] broken CPAP machine" (Tr. 285), in early-September 2006, he reported that he had been using a CPAP machine, but found it did "not entirely relive [sic] his somnolence and that even when using it," he woke "himself snoring" (Tr. 224). Accordingly, even when using his CPAP machine, plaintiff still apparently experienced fatigue. Whether further or different treatment for his sleep apnea

REPORT AND RECOMMENDATION
Page - 6

would cure his fatigue, the evidence in the record provides no indication.[3] As such, the undersigned finds this reason for discounting plaintiff's credibility to have been improper as well.

Plaintiff next argues he has been diagnosed with an adjustment disorder and has problems that cause him pain, which could reasonably result in problems with concentration. In regard to such problems, the ALJ found that:

> The claimant also mentioned some problems concentrating. While there is mention of fatigue in the record, I note that the claimant reads, goes to church three times a week, watches television, etc. There is no indication that he has any significant problem in mentally concentrating on these tasks. Therefore, I find that he has no severe mental impairment giving rise to any difficulty concentrating.

Tr. 20. Plaintiff asserts the above activities are not inconsistent with his testimony that he has difficulty concentrating. The undersigned disagrees. Reading, attending church and watching television certainly require the ability to concentrate. Plaintiff has pointed to no evidence in the record indicating that he has any problem attending to these activities as found by the ALJ. Accordingly, the undersigned finds no error to have been committed here.

The ALJ also discounted plaintiff's credibility for the following reason:

> The record shows that the claimant left work on a medical retirement. He was able to continue working at a light duty position until the retirement was approved. He told his doctor that he was going to work for a few more months and then leave, and that is what he did. This suggests that he was able to perform the light duty work that had been assigned him.

Tr. 21; see also Tr. 203. Plaintiff does not specifically challenge this basis for discounting his credibility. Indeed, as noted above, plaintiff's work prior to retiring consisted mostly of standing, rather than sitting. Nevertheless, the record indicates that plaintiff's retirement likely was due to medical reasons. See Tr. 324-25. As such, it is not entirely clear plaintiff would have been able to continue performing his previous work at the light level of activity. As such, the undersigned cannot necessarily say this was a valid basis upon which the ALJ found plaintiff to be not fully credible.

The ALJ found as well that plaintiff was "able to engage in a number of activities throughout his day," and that there was "no indication that his reliability in attending to the tasks he" chose to do had

---

[3] Defendant argues the record shows plaintiff's fatigue complaints generally were adequately addressed by medication. As an example, defendant points to a treatment note dated July 10, 2006, indicating that he was prescribed Ritalin in addition to Prozac. Tr. 189-90. This, however, fails to show what benefit, if any, plaintiff received from that prescription. Defendant also points to the fact that plaintiff reported in early August 2006, that he was "doing fairly well," and that "the small trial dose of Ritalin actually helped him get motivated," and he was "now a little bit more active." Tr. 183. Again, though, this does not demonstrate that plaintiff's fatigue was in fact diminished, or at least diminished to the point where it did not affect him.

REPORT AND RECOMMENDATION
Page - 7

"been impacted." Tr. 21. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Among the activities the ALJ found plaintiff engaged in were the following:

> He [plaintiff] said that he prepared light meals. He rested in the afternoon and napped. He said that if it was raining he could sleep all day. He said that he had joint custody with his son. He could use a computer, but he only uses one finger typing. He went fishing three times last year. He goes to church three times a week. . . . He took out garbage and folded laundry.

Tr. 19. Plaintiff here too does not specifically challenge this stated reason for discounting his credibility. Again, however, the undersigned finds it to be suspect. This is because the record does not clearly show that plaintiff is able to spend a substantial part of his day doing these activities. Nor did the ALJ explain how those activities are transferrable to a work setting. Indeed, napping, attending church three times a week and going fishing three times in one year hardly meet this standard. In addition, while taking out the garbage, folding laundry and using a computer certainly may be work-related, the record fails to indicate the frequency with which plaintiff engaged in such activities.

Lastly, the ALJ discounted plaintiff's credibility because his treating physician did not prescribe any narcotic pain medication. Tr. 21. This was proper. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation). Overall, though, the undersigned finds the ALJ's reasons for discounting plaintiff's credibility in this case to be insufficient. See Tonapetyan, 242 F.3d at 1148. Accordingly, remand for further consideration of plaintiff's credibility is warranted.

III. The ALJ's Step Five Analysis

If a disability determination "cannot be made on the basis of medical factors alone at step three of

the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ assessed plaintiff with the residual functional capacity "to stand and walk two hours in an eight hour day, for 10-15 minutes at a time," to "not lift more than ten pounds" and to "only occasionally

bend, squat, kneel, or stoop." Tr. 20. At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

> . . . [L]et's assume we have a younger individual, high school education and the past work as is described and the big problem, at least initially, was the cancer and the secondary affects of chemotherapy and then there's the back, hip, knees, hernia, obesity as mentioned, sleep apnea as mentioned and there was also a mention of headaches in the record. General consensus seems to be sedentary, but with some limitations on walking even beyond that, maybe 15/20 minutes at a time for a total of a couple hours a day and non-exertion I think postural, postural limitations are the big one, range of motion in terms of bending, kneeling, stooping, squatting and that sort of thing. . . .

Tr. 350-51. In response to that question, the vocational expert testified that there were two jobs plaintiff could do: telephone quotation clerk and small products assembler. Tr. 351. Based on the testimony of the vocational expert, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 22-23.

Plaintiff argues the ALJ erred in posing the hypothetical question to the vocational expert that he did, because that question did not include the same limitations as contained in his assessment of plaintiff's residual functional capacity. Specifically, plaintiff asserts that while the RFC assessment limited him to standing and walking for 10 to 15 minutes at a time, the hypothetical question limited him to walking 15 to 20 minutes at a time. Defendant acknowledges the discrepancy between the two, but argues it was a typographical error, because the 10 to 15 minute limitation is not supported by the medical evidence in the record. In the alternative, defendant argues that any error that occurred here was harmless, because the jobs identified by the vocational expert incorporated the ability to walk for 15 minutes, and so would not necessarily be precluded by the more restrictive limitation.

The undersigned finds defendant's arguments unpersuasive. First, as noted by plaintiff, nothing in the record indicates that the standing and walking limitation contained in the ALJ's residual functional capacity assessment was a typographical error, rather than a failure by the ALJ to make sure that limitation matched the one he included in the hypothetical question he posed. While defendant asserts that the 10 to 15 minute limitation is not supported by the medical evidence in the record, it is not at all clear the ALJ felt this to be so as well or would not have imposed that limitation anyway. Second, while the two limitations may overlap at the 15 minute mark, the range of time contemplated in the RFC assessment is still less than that contemplated by the hypothetical question. As the Court is not a vocational expert, the undersigned cannot say with any certainty that this difference is insignificant in the world of work.

1 Accordingly, the undersigned agrees with plaintiff that the ALJ erred here.

2 Plaintiff next argues the vocational expert did not give persuasive reasons as to why his testimony
3 regarding the jobs he identified deviated from the definitions of those jobs contained in the Dictionary of
4 Occupational Titles ("DOT"). The vocational expert testified that while the DOT defined the job of small
5 products assembler as being light work, "[a] portion of those" types of jobs in the national economy and in
6 the state of Washington "would be at a sedentary level." Tr. 351; see also DOT 706.684-022. The failure
7 by the vocational expert to give any reason or support for his deviation from the DOT's designation of the
8 small products assembler job as being light work, plaintiff asserts, means the ALJ did not meet his burden
9 at step five of the sequential disability evaluation process.

10 The undersigned agrees the ALJ erred here. The ALJ may rely on vocational expert testimony that
11 "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the
12 deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ also has the affirmative
13 responsibility to ask the vocational expert about possible conflicts between his or her testimony and
14 information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL
15 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not
16 disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the
17 DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. In addition, the ALJ must explain in
18 his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

19 The ALJ's failure to ask the vocational expert regarding the conflict between his testimony and the
20 DOT's definition of the job of small products assembler, and inquire as to the evidence upon which the
21 vocational expert relied regarding his testimony, was error. However, as pointed out by defendant, there
22 was still the job of telephone quotation clerk, which the vocational expert testified and the DOT defined as
23 being sedentary work, and which the vocational expert also found plaintiff could perform. Tr. 351; see also
24 DOT 237.367-046; 20 C.F.R. § 404.1566(b) (work exists in the national economy when there is significant
25 number of jobs in one or more occupations having requirements which claimant is able to meet with his or
26 her physical or mental abilities and vocational qualifications).

27 The undersigned thus agrees that the ALJ's error regarding the small products assembler job was
28 harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error

harmless where inconsequential to ALJ's ultimate disability conclusion). Nevertheless, given the other errors discussed above, remand for further consideration of plaintiff's ability to perform other jobs existing in significant numbers in the national economy is still warranted.

IV. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain concerning the medical evidence in the record from Dr. Mata, and in regard to plaintiff's credibility, residual functional capacity, and ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 29, 2008**, as noted in the caption.

DATED this 6th day of August, 2008.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge